

Richard A. Lesser - #5832
Steven M. McGuire, *pro hac vice*
LESSER & ASSOCIATES
A Professional Law Corporation
1 Pearl Street
Redondo Beach, CA 90277
Telephone: (310) 374-4808
Facsimile: (310) 372-7715
Email: lesser@divelaw.com

Attorneys for Claimants/Respondents and
Plaintiffs MATTHEW ISHAM, individually and
as Guardian ad Litem for, HAYDEN ISHAM,
a minor and ROXANNE BEST ISHAM

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 19 2006

at __1__ o'clock and __37__ min. P M
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF BLUE DOLPHIN CHARTERS, LTD. AND TERRY DONNELLY, AS OWNERS OF THE VESSEL M/V BLUE DOLPHIN, O/N 1082213, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY, | Civil NO. CV05-00037 HG-BMK<br>[3 Consolidated Cases]<br><br>MATTHEW ISHAM, individually and as Guardian ad Litem for, HAYDEN ISHAM, a minor and ROXANNE BEST ISHAM'S OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION FOR AUTHORITY TO WITHDRAW LIMITATION BOND; CERTIFICATE OF SERVICE |

1

|  |  |
|---|---|
|  | ) HEARING: |
|  | ) Date: |
|  | ) Time: |
|  | ) Courtroom: Aha Nonoi, 4th Floor |
|  | ) Judge:     The Hon. Helen Gillmor |
|  | ) |
|  | ) Jury Trial Date:   April 11, 2006 |
|  | ) Judge:     The Hon. Helen Gillmor |
|  | ) |
| MATTHEW ISHAM, individually and as Guardian Ad Litem for HAYDEN ISHAM, a minor; ROXANNE BEST ISHAM, | ) CIVIL NO.: CV 04 00559 HG-BMK |
| Plaintiffs, | ) |
| vs. | ) |
| BLUE DOLPHIN CHARTERS, LTD. and BLUE DOLPHIN DIVING, LTD., CAPTAIN ANDY'S SAILING, INC., DOES 1 - 50, | ) |
| Defendants. | ) |

| | |
|---|---|
| DENNIS CLAYPOOL, SHERYL CLAYPOOL individually and as Guardian ad Litem for KRISTEN CLAYPOOL, a minor, SCOTT CLAYPOOL,<br><br>Plaintiffs,<br><br>vs.<br><br>CAPTAIN ANDY'S SAILING, INC., BLUE DOLPHIN CHARTERS, LTD. And BLUE DOLPHIN DIVING, LTD.,<br><br>Defendants. | CIVIL NO.: CV 04 00570 HG-KSC |

**MATTHEW ISHAM, individually and as Guardian ad Litem for, HAYDEN ISHAM, a minor and ROXANNE BEST ISHAM'S OPPOSITION TO LEXINGTON INSURANCE COMPANY'S <u>MOTION FOR AUTHORITY TO WITHDRAW LIMITATION BOND</u>**

### INTRODUCTION

Despite lacking standing to even appear in this litigation, "Interested Party" Lexington Insurance Company (hereafter "Lexington") seeks to overturn 150 years of settled maritime law, transform the concept of a bond as an irrefutable pledge into a disposable litigation tactic, and finally, and in keeping with the earlier submissions to this court on behalf of Blue Dolphin Charters ("BDC"), has presented the Court with a completely false recitation of the facts and history of

3

the case as they relate to both Isham and Claypool. For those reasons, and after refusing to withdraw this motion even after being advised on two occasions of the specific fabrications, significant sanctions should be awarded against Lexington in favor of the responding parties.

## DISCUSSION

Lexington Insurance, raher than filing the Limitation Bond "in order to protect the interest of its insured, BDC, as to claims brought by the Claypools.", instead used the Limitation Act **exclusively** to attempt to deprive the two plaintiffs of the right to a jury trial. BDC's limitation rights had first been protected months earlier when raised as affirmative defenses in its answer to the respective complaints. See Exhibit "1", the facing page and affirmative defense number ten to the Claypool action; Exhibit "2" the facing page and affirmative defense number ten to the Isham Action. Additionally, and as discussed below, BDC specifically rejected the procedure accepted by then defendant Captain Andy's Sailing, Inc to stipulate with both plaintiffs to file an undertaking in lieu of a bond, preserve the limitation rights completely, but allow the jury trials to move forward outside of the Court ordered stay.

By filing this motion, Lexington seems to have snatched the National Chutzpah Award from Eric and Lyle Menendez, who argued in their murder trial (after killing their parents) for mercy on the grounds that they were orphans.

## BACKGROUND

As correctly noted in Lexington's moving papers,, the Court is fully aware

of the facts and circumstances regarding this tragic incident. Claypool and Isham were both maimed on July 20th, 2004 when the *Spirit of Kauai* stormed through Makol'e anchorage in the navigable waters off Kauai, with the vessel *Blue Dolphin* flying absolutely no warning flag, particularly the large Alpha flag required to be flown during diving operations by the Inland Rules of Navigation. As noted above, in its answer to both the Isham and Claypool personal complaints, which were filed by them on September 13th and September 14th, 2004 respectively, Blue Dolphin Charters raised limitation of liability as an affirmative defense.

    Though claiming once again in the instant motion that Lexington did not ever agree to provide a defense to the claims asserted by Isham against BDC, nonetheless it was the attorneys for BDC specifically retained by Lexington, Goodsill Anderson, and not BDC's private counsel, that responded to Isham's Seaman's Complaint for damages back in November 2004(After an extension had been granted to them to fully evaluate the complaint). Lexington's claim was false then, and remains so through today. The recent motion for partial summary judgment filed by Isham that is currently before this Court , based upon BDC's Section 53 violations, an area relating exclusively to the Jones Act claims brought by Isham and nothing whatsoever to do with the limitation action, was also responded to by Lexington's appointed counsel and not by Robert Miller, BDC's private counsel (See Exhibit 3) . The truth is that Lexington's appointed counsel for BDC did not even substitute out in favor of Robert Miller until April 21, 2005, over three months AFTER they had filed the Limitation action and bond on behalf

of BDC (Exhibit 4).

As noted in the Lexington Memorandum, their retained counsel did file a limitation action on January 19th, and concurrently filed a bond on behalf of Blue Dolphin, also requesting (and obtaining) a stay of the Claypool and Isham personal injuries suits.

That the filing of the bond was nothing except a litigation tactic is borne out by the actions of then defendant Captain Andy's Sailing Adventures in regard to the personal injuryclaims.  Rather than post a bond and request a stay, Captain Andy's had chosen, in a stipulated agreement with Isham and Claypool plaintiffs, (Exhibit 5), to file an undertaking protecting it's limitation rights, **(Exhibit 6) but allowing the Court to issue an order allowing the two personal injury suits to move forward toward a jury trial** (Exhibit 7).

This exact offer, stipulating to an undertaking in lieu of a bond, and agreeing with plaintiffs to give priority to their limitation rights, but still allowing the Isham and Claypool personal injury claims to move forward to a jury trial, was specifically rejected by BDC through their Lexington appointed counsel. (See Exhibit 8 and Exhibit 9).  Thereafter BDC, again through it's Lexington appointed counsel, vigorously fought the lifting of the stay and the consolidation of the two personal injury actions, culminating in the Court's  Order of last summer consolidating those two actions and the limitation action into a single trial.

Refusing to give up however, BDC (read Lexington) moved yet again to bifurcate the Isham and Claypool trials, in a motion that was rejected by the Court

even before responses had been filed by the opposing parties.

Further evidence that filing of the bond was not only a thinly disguised litigation tactic, but one that was very poorly thought out as well, abounds. As noted in the moving papers, Lexington did not insure directly BDC, but instead wrote a professional liability policy for dive instructors Matthew Isham and Eric Trout under which BDC was an additional insured, **but only as to the actions of the two dive instructors regarding their teaching and supervision of divers**. Since Eric Trout (the party under whose insurance Lexington continues to defend BDC) was not a vessel owner, limitation would be unavailable to him should the Claypool plaintiffs choose to proceed with a direct action, a basic tenet of admiralty law that was clearly known to BDC and Lexington at the time of the filing of the limitation action.

Once creating the limitation action however, with the intent (among other things) of depriving Matthew Isham of a jury trial, Lexington thereby and undisputably provided him with an In Rem action that did not previously exist, which under settled Admiralty law allowed him to perfect his claim against the limitation bond with the timely filing of his F5 claim against BDC, which he in fact did. It is also undisputed by Lexington that Isham is and always has been a claimant against that bond. One need only refer to the initial bond filed with the court (An Exhibit to the moving papers) to note the service of the bond on this office, with the designation of Isham as a "claimant".

Once the court finally ruled that the stay as to BDC would be lifted, and the Isham as well as the Claypool claims could proceed to a jury trial, only then did

Lexington begin to understand the problem it had created for itself. Lexington's first foray to solve its problem was to request a substitution of the vessel *Blue Dolphin* for the bond. However, once provided with the attached documentation from the U.S. Coast Guard (See Exhibit 10) that the First Hawaiian Bank held a $250,000.00 preferred ship's mortgage on the *Blue Dolphin*, that attempt was abandoned, resulting in the instant motion.

## ARGUMENT

Contrary to Lexington's moving papers, it has several other options besides simply requesting the Court to simply release the bond, though it may find them unpalatable.

Certainly it should look to who was involved in the initial decision process whereby a bond was filed and a stay requested, rather than taking the route of Captain Andy's and submitting an undertaking, while allowing the Plaintiffs' cases to move forward to jury trial, while still fully protecting the **insured interests** of BDC. Based upon the information presented at the global mediation last year it is clear that Lexington had delegated substantial authority to it's third party administrator, York Claims Services, as a representative of that company rather than one from Lexington itself, appeared and made decisions throughout the course of the mediation. If Lexington was given legal advice that rejecting the stipulation and filing the bond with the concurrent stay was the appropriate

method to protect **only it's insured interests** (which in hindsight was clearly wrong, though it was also blatantly apparent at the time to both plaintiffs' and even Captain Andy's counsel), then Lexington should take it up with them. Finally, if Lexington can support it's proposition that this course of action regarding the bond was approved before being taken by both BDC and its private counsel Robert Miller, which is a highly unlikely proposition given the tension that has seemed to exist throughout this litigation between BDC and it's counsel on one hand and Lexington's appointed counsel on the other, then Lexington proceeding at some point in the future against BDC (as was suggested in their counsel's letters to attorney Miller) would seem yet another avenue of redress, though one highly fraught with the peril of a bad faith claim in return.

Not surprisingly, the authorities cited by Lexington recite the obvious power of the Court to make equitable decisions, but none are remotely on point. The obvious reason there is an absence of case law is undoubtedly because few, if any prior Limitation plaintiffs had the temerity to even ask a Court to unilaterally release their Bond once it's purpose had failed and the stay had been lifted.

After reviewing the initial memo in support of releasing the bond, Isham advised the moving party not only that the request was in direct conflict with settled Admiralty law (Exhibit 11), but the following day also told them that the facts regarding Lexington's original as well as ongoing involvement in the Isham claim were falsely presented to the Court, citing the page and line (Exhibit 12). Both communications requested that this flawed motion be dismissed by Lexington, or sanctions would be sought. That request was clearly not honored by

Lexington, and accordingly, Isham requests that substantial sanctions, at the discretion of the court but considering the ongoing problem Lexington seems to have with the truth, be awarded against Lexington in his favor.

## SUMMARY

When the equities of this situation are fully considered, and a failed litigation strategy by an insurer for its own benefit in attempting to deprive a seaman of his jury trial rights are balanced against those rights, supported by the filing of a proper F5 claim in the limitation action, the balance is clearly in favor of Isham. Their arrogance in bringing the instant motion, and refusing to dismiss it in spite of direct knowledge of it's falsehoods, is clearly sanctionable.

In conclusion, and for the foregoing reasons, as well as in compliance with settled admiralty law, this court should order the subject bond to be maintained through the conclusion of the litigation, and award sanctions to the responding party.

Dated: Redondo Beach, California, January 18, 2006.

Respectfully submitted,

RICHARD A. LESSER
STEVEN M. MCGUIRE, *Pro Hac Vice*
LESSER & ASSOCIATES, PLC
Attorneys for Claimants/Respondents
and Plaintiffs MATTHEW ISHAM, individually
and as Guardian ad Litem for, HAYDEN ISHAM,
a minor and ROXANNE BEST ISHAM

I certify that this document is in 14 point Times New Roman font and contains 2354 words and does not exceed the page or word limitations set forth in Local Rule 7.5(b).

_____
Richard A. Lesser

C:\Documents and Settings\Rick Lesser\My Documents\OPPS3ISHAM.wpd