# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made by and between DENNIS CLAYPOOL, SHERYL CLAYPOOL, KRISTEN CLAYPOOL, and SCOTT CLAYPOOL, together with and each of their assigns, heirs, spouse, children, employees, agents past and present (hereinafter collectively referred to as the "RELEASORS") and ERIC TROUT, together with all of his assigns, heirs, spouse, children, employees, agents past and present, and LEXINGTON INSURANCE COMPANY, YORK CLAIMS SERVICES, INC. AND ITS AFFILIATED COMPANIES, together with all of their respective insurers, officers, partners, affiliates, parent companies, subsidiaries, successors, administrators, beneficiaries, assigns, heirs. employees, actual agents, implied agents, ostensible agents, past and present, and attorneys (hereinafter collectively referred to as the "RELEASEES"), with reference to the following:

## 1.0 RECITALS

1.1    On or about July 20, 2004, RELEASOR Dennis Claypool was injured in a scuba diving accident while engaged in a tour conducted by Blue Dolphin Charters, Ltd./Blue Dolphin Diving, Ltd. ("BDC"). RELEASEE Eric Trout was an employee of BDC on duty at the time of the accident. Thereafter, the RELEASORS filed a lawsuit entitled <u>Claypool et al. v. Captain Andy's Sailing, Inc. et al.</u>, Civil No. 04-00570 HG-KSC ("the LAWSUIT") naming, *inter alia*, BDC. While RELEASEE Eric Trout was never named in the LAWSUIT, it was alleged that his actions were in part responsible for the injuries to Dennis Claypool. RELEASEE LEXINGTON INSURANCE COMPANY is the insurer under policy no. 1323464, as to which a certificate of insurance was issued to Eric Trout, qualifying both him as insured and BDC as an additional insured thereunder.

EXHIBIT 3

RELEASEE YORK CLAIM SERVICES, INC. was the third-party administrator of claims under that policy.

1.2   Subject to the terms and conditions of this Agreement, the RELEASORS and RELEASEES wish to enter into a settlement with each other with respect to the facts, circumstances, and events referred to in the LAWSUIT and with respect to the claims and allegations made in the LAWSUIT.

1.3   These disputes and controversies which are being settled herein include, but are not limited to, the following: (a) any and all claims raised or which could have been raised in the LAWSUIT, including any claims for attorney's fees, interest, and/or costs; (b) any and all claims arising out of the accident which occurred on July 20, 2004. The foregoing list is not exhaustive but descriptive of certain specific matters which are included in the subject of this Agreement. The absence of any matter from the foregoing list shall not and is not intended to limit the scope of the waivers, release and other covenants that are set forth below.

1.4   Such disputes and controversies also include any and all claims, demands, causes of action, loss and liability of every type and nature whatsoever whether known or unknown, suspected or unsuspected, which relate or pertain to those claims and allegations made against Eric Trout in the LAWSUIT and any and all relationships and/or dealings of every type and nature by and between the RELEASORS and RELEASEES with respect to those matters referred to in the LAWSUIT.

1.5   Without admitting the validity of any claim, dispute, or controversy, it is the intention of the parties hereto to settle and dispose of, fully and completely, any and all claims disputes and controversies.

## 2.0 PAYMENTS

2.1 The RELEASORS acknowledge that the total settlement sum for the settlement between the RELEASORS and RELEASEES is $500,000.00 (FIVE HUNDRED THOUSAND DOLLARS) new money, over and above any sums that RELEASORS have heretofore received herein, in general damages only, in full and complete satisfaction of all claims which were asserted or could have been asserted in the LAWSUIT.

2.2 The RELEASORS, in consideration of the above-referenced total settlement sum and other good and valuable consideration receipt of which is hereby acknowledged, hereby release all claims against the RELEASEES arising from the claims described in Paragraph 3.1, and agree to execute any and all other necessary court filings and documents to effect the same, and to refrain from asserting any claims against the RELEASEES arising from the claims described herein, including as described in Paragraph 3.1.

## 3.0 WAIVER OF CLAIMS

3.1 IT IS UNDERSTOOD BY THE RELEASORS THAT THIS AGREEMENT EXTENDS TO ALL CLAIMS OF EVERY NATURE AND KIND WHATSOEVER, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, REGARDING OR ARISING OUT OF THE AFOREMENTIONED LAWSUIT AND THE FACTS, OCCURRENCES, AND TRANSACTIONS ON WHICH THE LAWSUIT IS BASED.

## 4.0 NO ADMISSION

4.1 This Agreement is a compromise and settlement of disputed claims among the parties hereto and, the settlement herein shall not be construed as an admission of liability by RELEASEES hereto.

4.2  It is expressly understood and agreed that this Agreement is the result of a compromise of disputed claims and that each of the RELEASEES denies any liability whatsoever to the RELEASORS, but in executing this Agreement, it is the intention of the RELEASORS and the RELEASEES to fully and finally dispose of any and all claims that exist or may hereafter exist arising out of or in any manner connected with or related to the LAWSUIT and/or the facts, occurrences, or transactions on which the LAWSUIT is based.

4.3  It is expressly understood and agreed that this Agreement constitutes a compromise of disputed claims involving legal and factual questions and is not to be construed as an admission of liability on the part of any of the RELEASEES.  It is the desire and intention of the RELEASORS and the RELEASEES to effect a formal settlement and resolution of all existing disputes and claims, regardless of their nature, with respect to the LAWSUIT and the subjects thereof.

## 5.0  RELEASE OF CLAIMS

5.1  In consideration of the settlement of the above LAWSUIT and of the covenants, promises, terms and conditions herein, the RELEASORS hereby release, discharge and acquit RELEASEES from any and all claims, demands, sums of money, actions rights, losses, causes of action, liens, loss of profits, compensation, agreements, contracts, covenants, suits, obligations, controversies, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature in law or equity or admiralty or *in rem* or otherwise, whether now known, suspected or unsuspected, and whether or not concealed or hidden, which have existed, may have existed, do exist or which hereinafter can, shall, or may exist (including, but without in any respect

limiting the generality of the foregoing) any and all claims that were or might have been made against RELEASEES, pertaining to or arising out of those matters, incidents, relationships, occurrences, or transactions occurring as a result of the accident which occurred on or about July 20, 2004, the facts and circumstances of which are more specifically set forth and alleged in the LAWSUIT.

### 6.0 ADVICE OF COUNSEL

6.1     In executing this Agreement, the RELEASORS acknowledge that, for themselves, each of them consulted with and received the advice of legal counsel duly admitted to practice in the State of Hawaii, and that the RELEASORS, and each of them, executed this Agreement after such consultation and with the opportunity to perform an independent investigation without fraud, duress, or undue influence.

### 7.0 NO ASSIGNMENT

7.1     The RELEASORS represent and warrant that the RELEASORS have not assigned or otherwise transferred or subrogated any interest in any claims which are the subject matter hereto and that the RELEASORS may have against RELEASEES. The RELEASORS agree to indemnify and hold RELEASEES harmless from any liabilities, losses, liens, claims, demands, costs, expenses, or attorneys' fees incurred by RELEASEES as a result of any person or entity, including, but not limited to, underwriters and insurance carriers asserting such assignment or transfer, outstanding claims by any and all medical providers to RELEASORS for services rendered to them. RELEASORS represent that they have signed no personal guarantee for such services.

## 8.0 HAWAII LAW

8.1    This Agreement shall be interpreted, enforced and governed under the laws of Hawaii.

## 9.0 FURTHER ASSISTANCE

9.1    The RELEASORS shall hereafter execute all documents and do all acts necessary, convenient or desirable, in the reasonable opinion of RELEASEES to effect the provisions of this Agreement.

## 10.0 INTERPRETATION

10.1    Wherever the context so requires, the singular number shall include the plural; the plural shall include the singular; and the masculine gender shall include the feminine and neuter genders.

## 11.0 CAPTIONS

11.1    The captions and headings by which the sections and subsections of this Agreement are identified are for convenience only and shall have no effect whatsoever upon its interpretation.

## 12.0 SEVERABILITY

12.1    If any provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, then such provision shall be deemed to be severed and deleted, and neither

such provision, nor its severance and deletion, shall affect the validity of the remaining provisions.

### 13.0 INTEGRATION

13.1   This Agreement (after full execution and delivery) memorializes and constitutes the entire agreement and understanding between RELEASORS AND RELEASEES, and supersedes and replaces all prior negotiations, proposed agreement and agreements, whether written or unwritten. The RELEASORS acknowledge that no other party, nor any agent or attorney of any other party has made any promise, representation or warranty whatsoever.

### 14.0   WARRANTIES: AUTHORITY

14.1   The RELEASORS hereby represent, warrant and agree that RELEASEES have made no statement, representation or promise, other than as set forth herein, to the RELEASORS in entering into this Agreement, upon which the RELEASORS have relied in entering into or executing this Agreement. Any representation, warranty, promise or condition, whether written or oral, not specifically incorporated herein shall not be binding upon RELEASEES. The RELEASORS acknowledge that in entering into this Agreement, the RELEASORS have not relied upon any representation, promise, or condition not specifically set forth herein.

### 15.0   ATTORNEYS' FEES

15.1   Each party shall bear their own costs and attorneys' fees. If any action is instituted by any party to this Agreement for breach of this Agreement or its terms, or for breach of any

warranty or representation herein, or to interpret or enforce this Agreement, then the prevailing party shall be entitled to recover that party's reasonable attorneys' fees and costs incurred.

### 16.0 COUNTERPARTS

16.1   The Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and which taken together shall constitute one and the same instrument.

### 17.0 AUTHORITY: VALID AND BINDING AGREEMENT

17.1   The RELEASORS hereby represent and warrant to RELEASEES and to the parties' respective counsel that the RELEASORS have full power and authority to enter into this Agreement and that this Agreement is a legal, valid and binding obligation of the RELEASORS.

### 18.0 FACTS MAY BE DIFFERENT

18.1   The RELEASORS hereby acknowledge and agree that any and all of the facts and circumstances relevant to this Agreement may be other than or different from the facts or beliefs now known or believed by the RELEASORS, and that nevertheless the releases, promises and covenants made herein shall be binding, effective, and enforceable.

### 19.0 AMENDMENT

19.1   This Agreement may be amended or modified only by a subsequent agreement in writing between or among the parties.

## 20.0  EFFECTIVENESS

20.1    This Agreement is effective upon its execution by the RELEASORS.

## 21.0   AGREEMENT TO CREDIT SETTLEMENT FUNDS
## PAID BY ISHAM TO BLUE DOLPHIN CHARTERS LTD/BLUE DOLPHIN DIVING, LTD.

21.1    As part of the consideration for this Agreement, the CLAYPOOLS, and each of them, warrant and agree that they will credit to BDC, including Terry Donnelly and BDC's agents and employees, on a dollar for dollar basis, any amounts paid by TROUT or by his insurers on his behalf which exceed TROUT's proportionate share of fault, which will be determined by the jury at the time of trial.

21.2    The CLAYPOOLS agree that neither BDC nor its employees or agents nor Terry Donnelly will be penalized pursuant to this agreement, if, at the time of trial, it is determined that the settlement paid by TROUT or by his insurers on his behalf is less than his proportionate share of fault.

21.3    The above agreement contemplates that all parties, including TROUT, whether released from the litigation or not, will appear on an appropriate special verdict form at the time of trial such that the proportionate liability of all parties can be determined in order to effectuate this section.

21.3    The CLAYPOOLS hereby acknowledge and accept that the above agreement modifies the rule of proportionate fault for Admiralty and Maritime cases as set forth in *McDermott, Inc. v. AmClyde* (1994) 511 U.S. 202, at least with respect to the settlement sums paid under this

Agreement. The CLAYPOOLS hereby expressly waive any and all rights to assert or otherwise seek the benefit of *McDermott* against BDC, its employees or agents and Terry Donnelly in the LAWSUIT, but only with respect to the sums they have received under this Agreement. The CLAYPOOLS further agree that BDC and Terry Donnelly are entitled to claim any and all benefits and rights due them as a result of plaintiffs' waiver of their right to assert that McDermott applies to any judgment, award or verdict against BDC, its employees or agents and/or Terry Donnelly.

## 22.0 CONFIDENTIALITY

22.1   The terms of this Agreement, including but not limited to the amount of consideration paid by RELEASEES and/or received by the RELEASORS shall be forever confidential as to third parties and/or non-parties to this Agreement, save for specific disclosures mandated by operation of law. The Parties agree that this Confidentiality provision shall be enforceable at law.

## 23.0 INDEMNIFICATION/HOLD HARMLESS

23.1   The RELEASORS, and each of them, agree to indemnify and hold RELEASEES harmless from any and every claim, medical lien, attorney lien, tax lien, or similar demand or interest, of every kind and that may ever be asserted by reason of the LAWSUIT; the facts, occurrences, or transactions on which the LAWSUIT is based; or the alleged injuries, illness or diseases, losses, damages, consequences or effects related thereto.

## 24.0 NO PARTY DEEMED DRAFTER

24.1   The Parties agree that no party shall be deemed to be the drafter of this Agreement, or any of its particular provisions, and further that in the event that this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision of this Agreement against any party as the drafter of this Agreement.

WHEREFORE, the RELEASORS hereto execute this Agreement on the day and year first indicated below.

APPROVED AS TO FORM AND
CONTENT:

Dated: February 15th, 2006

JOHN R. HILLSMAN, ESQ.
HAROLD G. HOPPE, ESQ.
Attorneys for Claypool Plaintiffs

Dated: 2/16/06

DENNIS CLAYPOOL

Dated: 2/16/06

SHERYL CLAYPOOL

Dated: 02-16-2006

SCOTT CLAYPOOL

Dated: 2-16-06

KRISTEN CLAYPOOL