MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED
The Markel Building, 49 Leadenhall Street, London EC3A 2EA
Tel: +44 (0)20 7953 6000   Fax: +44 (0)20 7953 6001   www.markelintl.com

26th May 2005

Mr. Terry Donnelly (President)
Blue Dolphin Charterers, Ltd.
PO Box 869
Eleele,
Kaui, Hawaii 96705
USA


RECEIVED
MAY 2 6 2005
MONROE & ZINDER
LOS ANGELES

DENIAL OF COVERAGE

Re:   Named Insured:   Megan Langley
      Claimants:       Dennis Claypool; Matthew Isham;
      Policy No.:      SA00336
      DOL:             20th July 2004
      Cert. Period:    30th April 2004 – 30th June 2005

Dear Mr. Donnelly:

We are writing on behalf of Markel Syndicate 3000 at Lloyd's in response to receipt of your 10th May 2005 "Tender for Defense and Indemnity of Megan Langley's policy #SA00336 for Blue Dolphin Charters, Ltd. (BDC) for Isham v. BDC and Claypool v. BDC".

According to your tender, you claim that Ms. Langley is a professional scuba instructor who had a duty to BDC to ensure that all diving activities were conducted properly and safely, and that there are claims by attorneys representing Claypool and Isham that Ms. Langley, while acting as the onboard dive master/safety officer, failed to adequately supervise the scuba divers, and failed to take preventive action as the Spirit of Kauai approached the dive area.

According to the Isham and Claypool complaints, Isham alleged that after the M/V Blue Dolphin moored at Mokol'e, he conducted an introductory scuba dive in the waters around the vessel, when he was struck by the Spirit of Kauai. He seeks recovery against BDC, based upon the following causes of action: Jones Act negligence, unseaworthiness, and maintenance and cure. Isham seeks recovery from Captain Andy's Sailing, Inc., (owners of the M/V Spirit of Kauai) based upon general maritime negligence. Isham alleges that he was a crewmember aboard the M/V Blue Dolphin, working in his capacity as dive master. His claims against BDC are based upon the general allegation that its "officers and agents" were negligent for failing to inspect, maintain, equip and operate the vessel, failing to provide Isham with a safe, proper, and suitable place in which to work, failing to provide Isham with safe, proper and suitable equipment, failing to provide a competent and adequate crew to assist Isham, failing to adequately supervise Isham's work, and failing to obey various regulations and statutes,



Registered Office: The Markel Building, 49 Leadenhall Street, London EC3A 2EA   Registered in England number 966670
Authorised and Regulated by the Financial Services Authority

4

including, but not limited to, failing to raise a recognized dive flag while Isham was engaged in scuba diving in the area of the vessel with the passengers. The alleged acts of negligence directed toward BDC were in general terms, and none of the allegations suggest that the insured, Megan Langley, individually or in her capacity as dive master, caused or contributed to the accident.

The Claypools' complaint is based on the negligence of BDC/BDD and Captain Andy, under maritime law, including but not limited to the defendants' failure to post a dive flag, or advise other vessels that there were divers in the water, failure to provide Claypool with adequate diving training, failure to provide Claypool with adequate equipment and supervision, and violations of certain statutes and regulations. The alleged acts of negligence directed toward BDC were in general terms and, once again, there are no specific references to any alleged acts or omissions of the insured, Megan Langley.

Based on our investigation of this claim to date, it does not appear that Ms. Langley was employed as the dive master on the M/V Blue Dolphin on the date of the accident.

On July 20, 2005, the four-member crew of the M/V Blue Dolphin consisted of the captain, Dave Lambdin, the insured, Megan Langley, Matt Isham, and Eric Trout. Langley was the vessel's safety officer, Trout the lifeguard, and Isham the dive master.

According to the summary of her March 31, 2005 deposition, Mrs. Langley began her employment with Blue Dolphin Charters, Inc. in the spring of 2002. On the date of the accident she was not involved with dive instruction or supervision of the customers who went scuba diving. Her job was as safety officer.

Ms. Langley stated that the safety officer remains on board the vessel. Her primary duty is to ensure the safety of the passengers during transit. As a safety officer, she did not have any duties with respect to the scuba divers. This responsibility was borne by the dive master, Isham. As a safety officer, she did not have any responsibility toward the divers while they were in the water because this would be the responsibility of the dive master, Isham. While on the way to the dive site, Isham gave the scuba divers the pre-dive briefing. Langley did not participate in this at all. Langley was not involved with any of the pre-dive paperwork. It was not her duty to watch for other vessel traffic within the dive area. It was not her responsibility or duty to raise the dive flag on the vessel.

Further, it is our understanding that BDC is presently being provided a defense pursuant to the PADI sponsored professional liability policy issued to Matt Isham.

We have reviewed the terms of policy number SA00336, issued to Megan Langley by Markel Syndicate 3000 at Lloyd's ("Markel"). That policy provides individual professional liability coverage to Ms. Langley as the named certificate holder during the certificate period of 1st April 2004 to 30th June 2005. We are writing to advise you that the policy does not provide coverage to BDC and therefore Markel must respectfully decline your tender of defense.

Additionally, we direct your attention to Policy Condition (E), which provides that there is no coverage under policy # SA00336 if other insurance is available to BDC. Hence, there is no coverage or defense owed to BDC to the extent it is covered by the PADI sponsored professional services insurance policy or other insurance.

Markel reserves the right to supplement this letter and to assert policy provisions and/or defenses not discussed herein. No waiver of the right to assert additional policy provisions or defenses is intended and such waiver is specifically denied. All actions taken in connection with the investigation and evaluation of the claims asserted should not be construed as an admission by Markel that the claim is covered or construed as a waiver of Markel's rights to invoke the terms, conditions, and limits of the captioned policy, all of which actions taken by Markel are done entirely without prejudice.

Yours sincerely,

Bernard C. E. Rice
Senior Claims Adjuster.

We direct your attention to the following provisions of the Markel policy issued to Ms. Langley, which bear on coverage.

## INSURING AGREEMENTS

I. COVERAGE – CLAIMS MADE

A. Subject to the Limit of Liability for Damages, the Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Bodily Injury and/or Property Damages for Claims arising from an Event caused by any negligent act, error or omission in the rendering of or failure to render Professional Services by an Insured.

B. This insurance only applies to Claims first made against the Insured during the period of this insurance as shown on the Policy Declarations Page arising from Events occurring subsequent to the retroactive date as shown on the Policy Declarations Page. Claims arising from the same Event made against the Insured over more than one period of insurance shall be deemed to have been made against the Insured during the period of Insurance is which the first Claim is made. If during the period of insurance the Insured first becomes aware of and gives written notice to Company of an Event occurring subsequent to the retroactive date likely to give rise to a Claim hereunder, then any subsequent Claim made against the Insured arising from such Event shall be deemed to have been first made during the period of insurance in which the Event was first reported.

C. If this insurance is not renewed of is canceled then, after termination of the last effective period of insurance, coverage will be provided for Claims arising from Events no more than ninety (90) days thereafter, provided that the Event occurred subsequent to the retroactive date and prior to termination of this insurance. After the ninety (90) day period. All coverage shall cease for any Claim arising from any Event which has not been previously reported as specified in this insurance. The ninety (90) day period shall not apply if this insurance is canceled due to non-payment of premium.

II. DEFENSE, SETTLEMENT, SUPPLEMENTAL PAYMENTS

A. [T]he Company further agrees to defend any Claim against the Insured ... alleging Damages for Bodily Injury and/or Property Damage which are covered and payable under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent.

\* \* \* \* \*

## ADDITIONAL DEFINITIONS

. . . . .

V.  INSURED

Each of the following in an insured under this insurance to the extent set forth below:

. . . .

B.  Anyone to whom a certificate of insurance had been issued under this policy;

C.  Any additional insured named by endorsement or certificate to this policy. It is hereby understood and agreed that this policy is extended to include the interest of additional insureds, solely, however, with respect to their interest in activities conducted by the named insured or certificate holder hereunder, but shall not operate to increase the limit of liability hereunder.

D.  The following are automatically an additional insured:

1. Retail Dive Business, including owners or partners
2. Educational Institutions, Certifying Agency, Dive Trade Organizations
3. Governmental Agency or Municipality
4. Swimming Pools or Water Facilities, including owners or partners
5. Dive Boat Operators, including owners or partners
6. Resort, Hotel, or Motel.

This additional insured protection shall in all cases by limited in scope to apply only to the regular operations of the named insured of [sic] certificate holder arising out of his or her supervision of, instruction in, and orientation to sanctioned aquatic activities.

VI.  PROFESSIONAL SERVICES

Professional Services means the instruction of [sic] supervision of recreational swimming, snorkeling, skin diving or scuba diving all being sanctioned aquatic activities provided by the Insured in his/her capacity as a certified swim instructor, skin diving leader, divemaster, dive control specialists (divecom), assistant instructor, scuba ranger, or sustaining/retired instructor.

## EXCLUSIONS

. . . .

L.  For any Claim which is directly or indirectly attribute[d] to any failure to comply with any applicable statute, regulation, ordinance, directive or order, provided that the failure to comply is an intentional, willful or deliberate act or omission of the Insured.

. . . .

R.  For Liability arising from acts other than those specifically approved and sanctioned by a national training agency for aquatic, organizational instruction, orientation or supervision.

\* \* \* \* \*

## CONDITIONS

. . . .

E.  Other Insurance. If other valid and collectible insurance is available to the Insured covering a Claim also covered by this insurance, the insurance afforded by the this insurance shall neither be in excess of nor will contribute with such other insurance. Notwithstanding an "other insurance" provision contained in any other valid and collectible insurance available to the Insured, the "other insurance" provision contained herein is controlling, and the Company shall not make any payments under this insurance if the claim is covered under the Insured's other insurance. . . . .

\* \* \* \* \*

BDC is not a certificate holder and has not been named as additional insured by endorsement or certificate (See Part V, sections B and C above). BDC is not an additional insured pursuant to the provisions of Part V, section D, since its alleged liability does not result from Ms. Langley's employment with DBC as the vessel's safety officer, including, but not limited to the fact that her duties did not include instruction or supervision of the scuba divers.

Moreover, there is no coverage to the extent that any alleged injury was not caused by a negligent act, error or omission in the rendering of or failure to render "Professional Services" by an insured as defined in the policy.

Further, since there are no allegations in the Isham and Claypool complaints suggesting coverage under the Policy, Markel is under no obligation to provide BDC a defense.